E-FILED; Dorchester Circuit Court
Docket: 12/4/2025 12:16 PM; Submission: 12/4/2025 12:16 PM
Envelope: 24099669

**IN THE CIRCUIT COURT FOR**
**DORCHESTER COUNTY, MARYLAND**

**KEY'MARION ENNALS**
c/o Greenberg Law Office
6 E. Biddle Street
Baltimore, MD 21202

    *Plaintiff.*

    vs.

**STATE OF MARYLAND,**
SERVE:    Dereck E. Davis
           State Treasurer
           80 Calvert Street
           Goldstein Treasury Building
           Annapolis, Maryland 21401

and

**AMANDA LEONARD**
*Dorchester County State's Attorney*
Dorchester County State's Attorney's Office
501 Court Ln, Unit 211
Cambridge, Maryland 21613

    and

**PHILIP DONOHO**
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202

    and

**ELLA DISHAROON**
Dorchester County State's Attorney's Office
501 Court Ln, Unit 211
Cambridge, Maryland 21613

    *Defendants.*

Case No.: C-09-CV-25-000343

**\* Jury Trial Demanded \***

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Key'Marion Ennals, by and through attorneys Cary J. Hansel, Kristen M. Mack, and the law firm of Hansel Law, PC, and Lawrence S. Greenberg and the Greenberg Law Offices, and sues the above listed Defendants, and as cause therefore state the following:

## INTRODUCTION

1.      This action is brought by Plaintiff as a result of the malicious prosecution of Key'Marion Ennals ("Mr. Ennals" or "Plaintiff") for the murder of Ja'len Woolford ("Mr. Woolford"). Mr. Woolford was murdered on November 18, 2021. Despite the fact that a confession had been obtained from Deaveon Johnson for the murder of Mr. Woolford as early as January 4, 2022—a confession corroborated by another witness named Gregory Lamont Cottman on February 15, 2023—Defendants continued to maliciously and unconstitutionally prosecute Mr. Ennals until a Dorchester County jury found him not guilty after less than 20 minutes of deliberation on September 3, 2024.

2.      As a result, Mr. Ennals was incarcerated for 631 days, from January 4, 2022 until September 27, 2023, before he was released pretrial—a decision that the court made after determining that State's Attorney Amanda Leonard ("Defendant Leonard") and the State's Attorney's Office committed ethical violations by failing to disclose evidence. While the court disqualified the entire State's Attorney's Office on September 27, 2023, it did not dismiss the case. Instead, it allowed a prosecutor from Prince George's County, Jonathon Church, to enter his appearance and pursue the criminal charges against Mr. Ennals at trial, which began on August 26, 2024. While the trial took four days, the jury only deliberated for approximately eighteen (18) minutes before rendering a verdict of not guilty for all charges against Mr. Ennals.

2

3.       Further adding to the prosecutorial misconduct here, Mr. Ennals also learned that his rights to a speedy trial were violated due to ex-parte communications between Defendants and the court.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction pursuant to Md. Code, Cts. & Jud. Proc. § 6-102, as Defendants are domiciled in the State of Maryland and/or are organized under the laws of Maryland and have their principal place of business in the State. In addition, Defendants caused the tortious injuries at issue in this case within the State pursuant to Md. Code, Cts. & Jud. Proc. § 6-103.

5.       Venue is proper in this forum pursuant to Md. Code, Cts. & Jud. Proc. § 6-201(a) as the named Defendants carry on their principal place of business in Dorchester County, Maryland.

6.       Plaintiff provided notice of his claim within one year of the date of the incident subject to this lawsuit, as required by the Maryland Tort Claims Act, Md. Code, State Gov't §§ 12-101, *et seq.*, and Plaintiff is in full compliance with said Act insofar as it applies to the instant case.  All conditions have been fully satisfied precedent to filing suit.

## PARTIES

7.       Plaintiff Key'Marion Ennals ("Mr. Ennals" or "Plaintiff") was, at all times relevant to the occurrence complained of herein, an adult citizen of Dorchester County, Maryland.

8.       Defendant State of Maryland ("Defendant State") is a body politic and corporate body that may sue and be sued and has waived any applicable sovereign immunity in accordance with the Maryland State Tort Claims Act under the State Government Article of the Maryland Code § 12-104. Defendant State operates the Dorchester County State's Attorney's Office

("DCSA"). Defendant State was responsible for the policies, practices, customs, and regulations governing and used at DCSA and for the misconduct, acts, and omissions of its employees, agents, or servants.

9.      Defendant Amanda Leonard is an adult citizen of the United States and at all times relevant hereto was the State's Attorney for DCSA whose conduct referred to herein was at all times relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

10.     Defendant Philip Donoho is an adult citizen of the United States and at all times relevant hereto was Deputy State's Attorney whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

11.     Defendant Ella Disharoon is an adult citizen of the United States and at all times relevant hereto was an Assistant State's Attorney for DCSA whose conduct referred to herein was at all times relevant to her employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law.

12.     All Defendants are jointly and severally liable for damages and injuries to the Plaintiff described herein.

## **FACTS**

13.     This case involves the loss of life of Ja'len Woolford on November 18, 2021, in Cambridge, Maryland.

14.     On January 4, 2022, the Cambridge Police Department executed a search warrant at 1011 Maces Ln., Cambridge, MD 21613, and detained Deaveon Johnson ("Mr. Johnson") for a search warrant and DNA samples.

15.    At 12:19 p.m. that day, Officer Hallman of the Maryland State Police Department interviewed Mr. Johnson and obtained a confession regarding the murder of Ja'len Woolford.

16.    During the interview, after Officer Hallman learned that Mr. Johnson was involved in or responsible for the death of Mr. Woolford, he allowed Mr. Johnson and Mr. Johnson's mother to name a slew of individuals who may have had some involvement with the shooting under the premise that Officer Hallman would speak with the prosecutor and ensure that Mr. Johnson received a deal. Many of the names provided by Mr. Johnson and his mother were either never investigated[1] or, as in the case of Mr. Ennals, falsely charged.

17.    On January 4, 2022, after Mr. Johnson's confession, Officer Hallman filed an Application for Statement of Charges against Mr. Ennals. Around 9:00 p.m. that day, Mr. Ennals voluntarily walked into the Cambridge City Police Department after learning there was a warrant for his arrest.

18.    At 9:54 pm, Officer Hallman interviewed Mr. Ennals, who repeatedly denied involvement in Mr. Woolford's death. At 11:14 pm, Mr. Ennals was arrested and processed at the Cambridge Police Department.

19.    Mr. Ennals had never been charged with any crime prior to this.

20.    On March 18, 2022, Mr. Johnson was charged with CR.2.201 (Murder – First Degree), CR.2.204 (Murder – Second Degree), CL (CON-Murder – First Degree), CL (Con-Murder – Second Degree), CR.2.205 (Attempted First Degree Murder), CR.2.206 (Attempted Second Degree Murder), five counts of CR.3.202 (Assault-First Degree), five counts of

---

[1] Counsel became aware that some of the names mentioned involved individuals who were not in Maryland on the night of the incident.

CR3204(a)(1) (Reckless Endangerment), CR.4.204b (Firearm Use/Fel-Viol Crime), and PS.5.133(d) (Poss of Firearm Minor) for the murder of Decedent.

21. Mr. Ennals was held without bond continuously until the Defendants' misconduct was brought to the court's attention and Mr. Ennals' Motion to Disqualify was granted on September 27, 2023. The State actively fought Mr. Ennals' release on bail and he remained on no-bail status until the granting of the Motion to Disqualify. In total, Mr. Ennals was held on no-bail status and deprived of his liberty for 631 days—a total of more than 20 months.

22. During this time, Mr. Ennals hired counsel who conducted discovery and filed for a speedy trial.

23. On July 7, 2022, the State requested that the Court waive Mr. Ennals' *Hicks* rule and Speedy Trial requirements over Mr. Ennal's objection.

24. On July 22, 2022, Judge Karen Dean waived Mr. Ennals' speedy trial rights and postponed the trial until February 6, 2023 over Mr. Ennals' strenuous objection. Judge Dean failed to state the grounds for the waiver on the record as to the reason behind the court's decision.

25. On October 24, 2022, despite knowing that Mr. Johnson killed Mr. Woolford, the State sent a formal plea agreement to Mr. Johnson, in which Mr. Johnson agreed to plead guilty to Count 1, CR.2.201 Murder – First Degree, and testify for the State against Mr. Ennals in the case C-09-CR-22-000076. In return for Mr. Johnson's testimony against Mr. Ennals, the State agreed to enter a nolle prosequi to all other counts of the indictment and recommend that Mr. Johnson receive a sentence of Life Imprisonment, suspending all but forty years, with five years of supervised probation, to be served under the Patuxent Youthful Offenders Program. Mr. Johnson was ultimately sentenced to Life Imprisonment, suspending all but twenty-five years, with five years' supervised probation. *State v. Deaveon La'Tee Johnson*, Case No. C-09-cr-22-000077.

26.     On or before February 6, 2023, Mr. Ennals hired Alexandria Chun, PC, who entered her appearance on behalf of Mr. Ennals and filed a request for Discovery and Inspection.  That same day, Mr. Ennal's jury trial was Cancelled/Vacated.

27.     On February 15, 2023, at approximately 1:30 PM, Officer Hallman and Defendant Donoho interviewed Gregory Lamont Cottman ("Mr. Cottman").

28.     At this interview, Mr. Cottman provided the State with information he learned directly from Deaveon Johnson.

29.     Specifically, Cottman told the State that Mr. Johnson admitted to shooting Mr. Woolford on the night of November 18, 2021, and that Mr. Johnson premeditated this murder. This evidence directly exculpates Mr. Ennals.

      a.     "Johnson told Cottman that he thought he shot the victim in the side."

      b.     "Johnson claimed that he was the one who shot the victim."

      c.     "Cottman said Christian [Tyrone Christian, who was allegedly in a car with Johnson and Ennals before the murder] did not think Ennals did anything because Johnson was bragging about the shooting."

      d.     "Johnson told Cottman that Los was there when the shooting happened, but he did not want to tell on him."

      e.     "Cottman thought that his first conversation with Johnson was in June 2022. The first time Johnson told Cottman about the homicide, Johnson said he ran up to the victim and shot him in the head.  Cottman stated that he was across the hall from Johnson at a later time, and Johnson told him that he was taking a plea deal soon after Christian had been caught with the gun.  When Johnson decided to take a plea, he started to share more

details about the homicide with Cottman.  When Johnson shared more details, he admitted

to Cottman that he did not shoot him in the head but in the side."

30.    The interview was audio and visually recorded.

31.    The State only disclosed a "Supplement Report" dated July 31, 2023, which was

allegedly prepared five (5) months after the interview but did not disclose any original reports

prepared contemporaneously with the interview notes from Officer Hallman or Defendant

Donoho.

32.    During the interview, Mr. Cottman also provided the State with handwritten notes

that he had kept of his discussions with Mr. Johnson and others.

33.    On March 1, 2023, the court entered a Notice of Assignment and scheduled Mr.

Ennals' Jury Trial for August 21, 2023.

34.    On or before March 15, 2023, Mr. Ennals hired Lawrence Greenberg, Esq.  ("Mr.

Greenberg"), Mr. Greenberg entered his appearance in this matter and filed a Motion for a Speedy

Trial, Demand for Discovery and Inspection, and a Motion to Suppress.

35.    On March 15, 2023, Mr. Greenberg filed a motion asking the State to comply with

their discovery obligations, in part, by providing all exculpatory evidence or evidence that tends

to impeach the State's witness.

36.    On April 7, 2023, Mr. Greenberg filed a Demand for Bill of Particulars, which was

granted on April 11, 2023.

37.    In the demand, Mr. Greenberg requested the State identify which of the hundreds

of thousands of documents are relevant to this case and further informed the State that its method

of providing Discovery has prevented the Defense from downloading or accessing many of the

documents.

8

38.    On April 7, 2023, Defendant Leonard emailed Mr. Greenberg stating that they would be willing to download Discovery onto a portable hard drive.

39.    On April 25, 2023, staff for Mr. Greenberg emailed Defendant Leonard regarding the status of Discovery information specially requested by the defense on April 07, 2023, and the State's response to the Demand for Bill of Particulars granted two weeks earlier.

40.    On April 26, 2023, Defendant Leonard emailed Mr. Greenberg stating, among other things, that the digital discovery drive, which the defense could not fully access, contained all the interviews, reports, and other information relevant to this case, and that the State was not in possession of any *Brady* or *Giglio* information.

41.    On September 20, 2023, Defendant Leonard advised Mr. Greenberg that she had conducted a witness preparation meeting with Deaveon Johnson on September 18, 2023, where he provided new evidence for the first time, namely that two individuals, "Los" and Tyrone Christian, were involved in the murder.  The interview was apparently not audio or video recorded.

42.    Immediately following that conversation, Mr. Greenberg sent Defendant Leonard an email on September 20, 2023 again requesting full discovery. At the end, counsel wrote:

> Lastly, it feels like the saying "you only know what you know," applies here.  In the past day, which is approximately a week before trial, you provided us with documentation and information that existed a year ago, as well as new information that could have been provided at a time when we could have engaged in additional discovery to uncover the facts and witnesses to dispute this information.  I make a final request that if there is additional information you are sitting on, disclose it now.  Please provide this information by the close of business on September 21, 2023, or we will take all legally appropriate actions for these ongoing failures to comply with the law.

43.    On September 21, 2023, Defendant Leonard, called Mr. Greenberg to discuss Mr. Greenberg's email and told Mr. Greenberg that she was "one of the honest ones" and "does not hide evidence."

44.    Towards the end of the call, Defendant Leonard advised Mr. Greenberg, "just to make sure you know we are being upfront, although I'm not required to share this with you," that she was going to disclose a report authored by Officer Hallman detailing the interview with Gregory Cottman, that occurred on February 15, 2023, which had never been disclosed.

45.    Before September 21, 2023, eleven (11) days before trial, the State had never disclosed Mr. Cottman's existence nor the information he shared with the State seven (7) months earlier to the defense.

46.    When asked when she and her office learned of this interview, Defendant Leonard reluctantly admitted that she had personal knowledge of the interview at the same time it occurred.[2]

47.    When questioned about the delay in disclosing the evidence, Defendant Leonard attempted to explain her unethical behavior by suggesting that her failure was not significant because she did not intend to call Cottman at trial.

48.    Interestingly, on the phone call with Mr. Greenberg on September 21, 2023, Defendant Leonard only mentioned that she would send the report from the Cottman interview but never mentioned that the interview was recorded and that she was in possession of the recorded interview.

49.    Upon receipt of the written interview, Cottman advised the State on February 15, 2023, that "POPS GAVE SPANKY [Johnson] THE 10 IN THE CAR.  THEY TAKE OFF RUNNING UP TO STORM [Decedent].  SPANKY SAYS HE SHOT HIM BUT HE KNOWS HE HIT HIM HE COULDN'T TELL WHERE AT.  HE SAID HE WASN'T SURE WHERE KEYBABY[3] WAS.  HE SAYS HE RAN BACK TO THE CAR GOT THERE FIRST.  THEY

---

[2] It is known that Defendant Donoho attended the interview, questioned Cottman, and took notes simultaneously which were not provided to the defense either.
[3] Keybaby is the family nickname of Plaintiff.

WERE LOOKING FOR KEYBABY THEN HE CAME SAID HE HURT HIS KNEE. SPANKY SAID HE THINK HE BITCHED OUT," and "[JOHNSON] TOLD ME [COTTMAN] EVERYTHING HOW IT WAS SETUP AND THAT HE SHOT HIM."

50.    This information that Defendant Leonard disclosed was neither included in Officer Hallman's report nor mentioned by the State at any time before they got caught withholding evidence.

51.    Defendant Leonard also did not mention that Cottman gave her office handwritten notes of his discussions with other inmates who allegedly had knowledge of Mr. Woolford's death.

52.    Following the phone call, on September 21, 2023, eleven (11) days before trial, the State disclosed the report of her office's interview with Johnson on September 18, 2023, in which new information was raised.

53.    Mr. Greenberg learned that, despite Defendant Leonard's assurances that she learned about new witnesses "Los" and Tyrone Christian on September 18, 2023, the State actually learned about the two individuals on February 15, 2023 when they interviewed Cottman.

54.    It was not until Mr. Greenberg thoroughly reviewed the newly disclosed Cottman report that he learned about the additional evidence that the State still had not disclosed.

55.    On September 22, 2023, at 10:00 am, Mr. Greenberg communicated with Defendant Leonard via email requesting the recording and notes mentioned in the Cottman Supplemental Report and requested that all future communications be in writing.

56.    On September 22, 2023, at 11:56 am, Defendant Leonard responded by email stating that the audio and video recording of Cottman's interview was uploaded to the shared discovery drive and that Officer Hallman's report was now uploaded.

57.    The State's Attorney's Office repeatedly failed to file the required service of discovery, presumably to avoid alerting the Court of her *Brady* violations and her late, incomplete disclosures of new exculpatory evidence.  In addition to the rules requiring the notices, the record would not be accurate due to counsel's failure to file them.

58.    On September 23, 2023, at 10:57 am, Mr. Greenberg emailed Defendant Leonard and stated, "The only report you uploaded regarding [Officer] Hallman's and your office's February 15, 2023, interview of Gregory Cottman is the July 31, 2023, *Supplement* Report from [Officer] Hallman.  Please send me the original report, and all notes from anyone related to that interview or subsequent investigations based on the interview.  This request also includes Cottman's notes that were mentioned in the interview."

59.    On September 23, 2023, at 7:06 pm, Defendant Leonard sent Mr. Greenberg an email explaining, "***The original sent to me had the wrong date in the start of the report***.  My understanding is that it's labeled "supplement" because it's supplementing any already existing reports related to the Woolford homicide investigation.  I've attached that copy with the scanned notes."

60.    Upon receiving the email which contained an altered Supplement Report of the February 15, 2023, interview with Cottman, someone changed the date of the Cottman interview to "**November 15, 2023."  There were no initials indicating who changed the report—it was simply typed-over.**

61.    Further, upon reviewing Cottman's handwritten notes that were provided to Defendants Leonard and Donoho and Officer Hallman, the Miranda form and Cottman's notes were dated and signed on February 15, 2023.

62.     It is unclear how Defendant Leonard thought she could convince anyone that the interview actually occurred on a future date (November 23, 2023), especially when the defense was already in possession of the prior report.  Further, her September 23, 2023 email to Mr. Greenberg explaining, "The original sent to me had the wrong date in the start of the report," shows, at best, sloppy police work and that multiple reports were generated, or at worst, the police and the State's Attorney's Office were attempting to suborn perjury and fraud.  Either way, reports were altered and not disclosed in an effort to prejudice Mr. Ennals.

63.     It was clear that Defendant Leonard voluntarily withheld evidence despite her assurances she made via email on April 26, 2023, as neither Defendant Leonard nor Defendant Donoho mentioned this interview, despite having direct knowledge of its existence.

64.     Between March and September 2023, Mr. Greenberg filed at least five motions to dismiss for failure to disclose evidence. Yet the State continued to send discovery in pieces, failing to meet their discovery obligations and voluntarily withholding evidence.

65.     As of seven (7) days before trial, Defendant Leonard and her office had committed multiple ethical and legal violations, failed to provide additional notes mentioned in the report, failed to file her service of discovery notice with the court, and *still* failed to provide a finalized list of her trial witness and trial evidence disclosures that are *mandatory* and must be done without request under Md. Rule 4-263.

66.     As of seven (7) days before trial, Defendant Leonard had yet to provide the State's documents, including but not limited to Officer Hallman or Defendant Donoho's original report or notes prepared after Cottman's February 15, 2023, interview, notes depicting any interview or investigation with any person after Cottman's interview, or any other documents that the State had not previously disclosed.

67.     Based on information provided by the State, at the time of the February 15, 2023 interview, Cottman was an inmate in Somerset County awaiting trial for State of Maryland vs. Gregory Lamont Cottman, C-19-CR-23-000002, Circuit Court for Somerset County.  However, based on the facts contained in the Maryland Judiciary Case Search, Cottman was released from Commitment on March 17, 2023, one month after he provided information to Defendant Leonard's office and Officer Hallman.  It is unknown if the State entered into a plea bargain with Cottman despite the fact that Defendants were required to divulge any plea agreements if they were made.

68.     At the time Mr. Ennals learned of Defendants' acts, he had been incarcerated since January 4, 2022.

69.     Mr. Ennals filed an Emergency Motion to Dismiss and for Lack of Speedy Trial on September 25, 2023.

70.     The motion asked the court to dismiss the case against Mr. Ennals with prejudice due to the long, unjustified delay in his prosecution.

71.     Mr. Ennals had been incarcerated since his arrest on January 4, 2022.

72.     On September 27, 2023, the court granted Mr. Ennal's separate Motion to Disqualify State's Attorney Amanda Leonard, ASA Ella Disharoon, and the State's Attorney's Office for Dorchester County.

73.     That motion was granted as the result of the State withholding exculpatory evidence from the defense for over seven months and eventually providing it to the defense nearly on the eve of trial.

74.     While the court found that the State withheld exculpatory evidence for seven months (February 15, 2023, through September 22, 2023), it did not rule on Mr. Ennal's Motion to Dismiss for Lack of Speedy Trial at the hearing.

14

75.    At the time of the hearing, Mr. Ennals had been incarcerated for 631 days.

76.    The basis for the court disqualifying the Dorchester County's State's Attorney's Office was that it engaged in prosecutorial misconduct, and based on a October 27, 2023, meeting outlined below, continued to engage in misconduct which was unknown to Mr. Ennals.

77.    The court then postponed the criminal case indefinitely for the assignment of specially assigned counsel.

78.    On October 20, 2023, Defendant Leonard petitioned this court to appoint Assistant State's Attorney from Prince George's County Jonathon Church as Special Prosecutor, which was granted October 24, 2023.

79.    On October 27, 2023, counsel appeared in chambers and met with the Honorable James Sarbanes. During that meeting, which was not on the record, Judge Sarbanes advised that at least one member of the State's Attorney's office, Defendant Disharoon, engaged in an ex-parte communication with Judge Dean prior to the September 27, 2023 hearing.  While Judge Sarbanes did not disclose the actual text surrounding the communication, despite a request to do so, he did advise that Defendant Disharoon texted Judge Dean sometime after Mr. Greenberg uncovered the state's failure to disclose exculpatory evidence, and Defendant Disharoon said that she was not part of what was about to become public.

80.    Following that meeting, neither the State nor the court disclosed the extent or content of the ex-parte communications between Judge Dean and Disharoon.

81.    At that time, Mr. Ennals, through counsel, was advised that only one ex-parte communication existed, so the Defendant filed motions to take depositions of Defendants Leonard and Disharoon, and Judge Dean.

15

82.    On December 1, 2023, this Honorable Court granted Mr. Ennals the ability to take the depositions of Defendants Leonard and Disharoon.

83.    Mr. Greenberg served subpoenas on Defendants Leonard and Disharoon and Judge Deans to attend a deposition and to provide documents of communications between the attorneys and Judge Dean relating to the Ennals case.

84.    Defendant Leonard and Judge Dean filed protective orders promptly, which were granted, but on December 15, 2023, when Mr. Greenberg received a letter from Defendant Disharoon's counsel stating that he believed a protective order had been filed regarding communications between Defendants Disharoon and Leonard, and that she would not appear for the deposition, counsel provided *TWO* additional texts, not just the one that the court previously advised counsel of.

85.    The first text purported to be between Defendant Disharoon and "Karen" which was presumed to be Judge Dean, on July 20, 2022, in which Defendant Disharoon advised Judge Dean, prior to the date in which the *Hicks* waiver was made, "We have a motions hearing Friday with you in a homicide (Key'Marion Ennals) and *we need to postpone the hearing* if possible."

86.    This ex-parte communication was not disclosed to Mr. Ennals at any time prior to the court granting the postponement of the trial past the speedy trial/Hick's date.

87.    Further, despite the Defendants failing to disclose the ex-parte communications, Judge Dean did not recuse herself from this case at any time prior to or after the communications or advise Mr. Ennals' counsel of the ex parte communications.

88.    The second text, which Judge Sarbanes acknowledged, occurred on September 25, 2023, when Defendant Disharoon, acting in her professional capacity as an Assistant State's Attorney for Defendant Leonard, texted Judge Karen Dean, ex-parte, stating that "I have nothing

to do with anything that might be filed over the next few days. Only been in this case for a couple weeks. Just fyi...”

89.    Since Defendant Disharoon had been texting Judge Dean, ex-parte, since July 20, 2022, this statement was blatantly false.  Further, Defendant Disharoon met with Mr. Greenberg, Defendant Leonard and Officer Hallman in the State's Attorney's office on August 3, 2023, to discuss issues with the case.

90.    Mr. Ennals was not aware of, nor consented to, any ex-parte communications between the State and Judge Dean.

91.    To date, Mr. Ennals was not permitted to obtain additional documents between the court and Defendants other than Defendant Disharoon's alleged limited texts.

92.    Mr. Ennal's criminal trial began on August 26, 2024, and it lasted four days.

93.    A jury returned a not guilty verdict on all counts within 18 minutes.

94.    In addition to all other damages related to his lengthy incarceration, as otherwise set forth herein, Mr. Ennals' sister died while he was incarcerated. Mr. Ennals filed a motion for compassionate release to allow Mr. Ennals to be transported to her funeral, but Defendant Leonard opposed Mr. Ennals' motion. Ultimately, Judge Dean denied Mr. Ennals' motion and Mr. Ennals was not permitted to attend his sister's funeral.

### COUNT I — AGAINST ALL DEFENDANTS
**Maryland Declaration of Rights, Articles 24 and 26 — Malicious Prosecution**

95.    Every paragraph not falling under this Count is incorporated herein by reference.

96.    Articles 24 and 26 of the Maryland Declaration of Rights protects citizens against unreasonable search or seizure, including protection against being prosecuted without probable cause.

97.     At all relevant times, the Defendants acted under color of State law, within their capacity and authority as State's Attorney and/or Assistant State's Attorney and/or Assistant Attorney General.

98.     The Defendants deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by falsely prosecuting Plaintiff after discovering exculpatory information, by improperly withholding evidence from Plaintiff and Plaintiff's counsel, engaging in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaging in other misconduct that deprived Plaintiff of his liberty.

99.     There was no probable cause or justification for the prosecution of Plaintiff, as explained above; exculpatory evidence existed to prove Plaintiff's innocence, which was ignored by the Defendants, covered up by the Defendants, and/or negligently disregarded by the Defendants. Defendants also improperly withheld this evidence from Plaintiff's counsel.

100.    Further, Defendants falsified and/or misstated vital information in their court filings, in communication with Plaintiff's counsel, and in reports, including, but not limited to, the reports relating to the exculpatory interview of Mr. Cottman.

101.    After Plaintiff was arrested on January 4, 2022, he was held continuously without bail until the Defendants' misconduct was brought to the court's attention and the court granted Plaintiff's Motion to Disqualify on September 27, 2023. Defendants' misconduct deprived Plaintiff of his liberty for 631 days—a total of more than 20 months.

102.    Plaintiff did not consent to the Defendants' deprivation of his liberty.

103.    The Defendants had no legal justification to prosecute Plaintiff and deprive him of his liberty. The Defendants had no probable cause to believe that Plaintiff had committed a crime, and Defendants had no justification to withhold crucial evidence from Plaintiff and Plaintiff's

counsel and to engage in impermissible ex parte communication with the court to improperly delay Plaintiff's trial and ensure his continuing pre-trial detention.

104.    The Defendants acted under color of State law, within their capacity and authority as State's Attorney and/or Assistant State's Attorney and/or Assistant Attorney General. As such, Defendant State is liable for the Defendants' misconduct.

105.    In the alternative, the Defendants' unconstitutional deprivation of Plaintiff's liberty without justification or probable cause and misconduct in improperly withholding evidence from Plaintiff's counsel and engaging in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights constitutes gross negligence, and the Defendants are personally liable for their own conduct.

106.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT II — AGAINST ALL DEFENDANTS
### Fourth Amendment — Malicious Prosecution

107.    Every paragraph not falling under this Count is incorporated herein by reference.

108.    The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable search or seizure, including protection against being imprisoned without probable cause. These constitutional protections are applied to the states and their political subdivisions under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

109.    At all relevant times, the Defendants acted under color of State law, within their capacity and authority as State's Attorney and/or Assistant State's Attorney and/or Assistant Attorney General.

110.    The Defendants deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by falsely prosecuting Plaintiff after discovering exculpatory information, by improperly withholding evidence from Plaintiff and Plaintiff's counsel, engaging in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaging in other misconduct that deprived Plaintiff of his liberty.

111.    There was no probable cause or justification for the prosecution of Plaintiff, as explained above; exculpatory evidence existed to prove Plaintiff's innocence, which was ignored by the Defendants, covered up by the Defendants, and/or negligently disregarded by the Defendants. Defendants also improperly withheld this evidence from Plaintiff's counsel.

112.    Further, Defendants falsified and/or misstated vital information in their court filings, in communication with Plaintiff's counsel, and in reports, including, but not limited to, the reports relating to the exculpatory interview of Mr. Cottman.

113.    After Plaintiff was arrested on January 4, 2022, he was held continuously without bail until the Defendants' misconduct was brought to the court's attention and the court granted Plaintiff's Motion to Disqualify on September 27, 2023. Defendants' misconduct deprived Plaintiff of his liberty for 631 days—a total of more than 20 months.

114.    Plaintiff did not consent to the Defendants' deprivation of his liberty.

115.    The Defendants had no legal justification to prosecute Plaintiff and deprive him of his liberty. The Defendants had no probable cause to believe that Plaintiff had committed a crime, and Defendants had no justification to withhold crucial evidence from Plaintiff and Plaintiff's counsel and to engage in impermissible ex parte communication with the court to improperly delay Plaintiff's trial and ensure his continuing pre-trial detention.

116.    The Defendants' conduct constituted an utter disregard for the established and manifest Fourth Amendment rights of Plaintiff, to the point that Plaintiff was treated as if those rights did not exist, even though the Defendants knew, or should have known, of the existence of those rights. In the alternative, the Defendants' conduct constituted a knowing and intentional violation of Plaintiff's Fourth Amendment rights.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and

punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

### COUNT III — AGAINST ALL DEFENDANTS
**Malicious Prosecution**

118.    Every paragraph not falling under this Count is incorporated herein by reference.

119.    Plaintiff has a protected property and liberty interest in his freedom, his ability to exercise free will and domain over his person, and his ability to be free from unlawful and excessive police force. Plaintiff has a right to be free from malicious prosecution of criminal charges.

120.    On January 4, 2022, Plaintiff was arrested on charges relating to the death of Mr. Woolford. Plaintiff was charged with CR.2.201 (Murder – First Degree), CR.2.204 (Murder – Second Degree), CL (CON-Murder – First Degree), CL (Con-Murder – Second Degree), CR.2.205 (Attempted First Degree Murder), CR.2.206 (Attempted Second Degree Murder), five counts of CR.3.202 (Assault-First Degree), five counts of CR3204(a)(1) (Reckless Endangerment), CR.4.204b (Firearm Use/Fel-Viol Crime), and PS.5.133(d) (Poss of Firearm Minor).

121.    The Defendants proceeded to incarcerate Plaintiff for over 20 months while pursuing prosecution of those charges.

122.    After a jury trial, the charges were terminated in Plaintiff's favor as a jury acquitted Plaintiff of all charges on September 3, 2024.

123.    The Defendants falsely prosecuted Plaintiff after discovering exculpatory information, improperly withheld evidence from Plaintiff and Plaintiff's counsel, engaged in *ex*

*parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaged in other misconduct that deprived Plaintiff of his liberty.

124.    There was no probable cause or justification for the prosecution of Plaintiff, as explained above; exculpatory evidence existed to prove Plaintiff's innocence, which was ignored by the Defendants, covered up by the Defendants, and/or negligently disregarded by the Defendants. Defendants also improperly withheld this evidence from Plaintiff's counsel.

125.    Further, Defendants falsified and/or misstated vital information in their court filings, in communication with Plaintiff's counsel, and in reports, including, but not limited to, the reports relating to the exculpatory interview of Mr. Cottman.

126.    The Defendants pursued prosecution against Plaintiff for incredibly serious felonious carrying extensive sentences, which resulted in the deprivation of Plaintiff's liberty for over 20 months during the pre-trial proceedings. The Defendants' extreme deprivation of Plaintiff's liberty without cause or justification demonstrates ill will, improper motivation, and/or evil motive.

127.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the

nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

**COUNT IV — AGAINST DEFENDANT STATE**
**Negligent Training, Hiring, Supervision, and Retention**

128.    Every paragraph not falling under this Count is incorporated herein by reference.

129.    Defendant State has a duty to ensure State's Attorneys, Assistant State's Attorneys, and Assistant Attorneys General are trained to conduct their prosecutorial activities within constitutional bounds, a duty to ensure the State's Attorneys, Assistant State's Attorneys, and Assistant Attorneys General Defendant State hires are competent, and a duty to discipline and/or fire attorneys who failed to conduct their duties in a constitutional manner.

130.    Defendant State breached its duty to ensure that the Defendants were competent and  trained in the state and federal constitutional limits of their prosecutorial authority, which led the Defendants to believe that they could unconstitutionally prosecute Plaintiff without probable cause, withhold exculpatory evidence from Plaintiff and Plaintiff's counsel, engage in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engage in other misconduct that deprived Plaintiff of his liberty.

131.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

### COUNT V — AGAINST DEFENDANTS LEONARD, DONOHO, DISHAROON
**Gross Negligence**

132.    Every paragraph not falling under this Count is incorporated herein by reference.

133.    When the Defendants prosecuted Plaintiff after discovering exculpatory information, improperly withheld evidence from Plaintiff and Plaintiff's counsel, engaged in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaged in other misconduct that deprived Plaintiff of his liberty, the Defendants had no constitutional or legally valid basis for doing so.

134.    When the Defendants prosecuted Plaintiff after discovering exculpatory information, improperly withheld evidence from Plaintiff and Plaintiff's counsel, engaged in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaged in other misconduct that deprived Plaintiff of his liberty, the Defendants violated Plaintiff's rights under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

135.    The Defendants had a manifest duty to abide by the constitutional limits of their prosecutorial authority.

136.    The Defendants violated that duty by violating Plaintiff's rights under the Fourth Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

137.    The Defendants could not have reasonably believed that they were within their constitutional authority to prosecute Plaintiff after discovering exculpatory information, improperly withhold evidence from Plaintiff and Plaintiff's counsel, engage in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engage in other misconduct that deprived Plaintiff of his liberty. Accordingly, these acts constitute acts so utterly indifferent to the rights of Plaintiff that the Defendants acted as if those rights did not exist.

138.    In the alternative, the Defendants' actions constituted an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life of another, and evinced a thoughtless disregard of the consequences to Plaintiff's life without the exertion of any effort to avoid those consequences.

139.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the

nature of the case requires including, but not limited to, declaratory and injunctive relief declaring

the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining

future unlawful and unconstitutional misconduct of the same type.

## COUNT VI — AGAINST ALL DEFENDANTS
### Negligence

140.    Every paragraph not falling under this Count is incorporated herein by reference.

141.    When the Defendants prosecuted Plaintiff after discovering exculpatory

information, improperly withheld evidence from Plaintiff and Plaintiff's counsel, engaged in *ex*

*parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy

trial rights, and engaged in other misconduct that deprived Plaintiff of his liberty, the Defendants

had no constitutional or legally valid basis for doing so.

142.    When the Defendants prosecuted Plaintiff after discovering exculpatory

information, improperly withheld evidence from Plaintiff and Plaintiff's counsel, engaged in *ex*

*parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy

trial rights, and engaged in other misconduct that deprived Plaintiff of his liberty, the Defendants

violated Plaintiff's rights under the Fourth Amendment of the United States Constitution and

Articles 24 and 26 of the Maryland Declaration of Rights.

143.    The Defendants had a manifest duty to abide by the constitutional limits of their

prosecutorial authority.

144.    The Defendants violated that duty by violating Plaintiff's rights under the Fourth

Amendment of the United States Constitution and Articles 24 and 26 of the Maryland Declaration

of Rights.

145.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and

continues to suffer, mental pain and suffering as a result of the 20 months spent incarcerated for a

crime that he did not commit, including, but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, grief, anxiety, and loss of enjoyment of life. Plaintiff has further suffered, and continues to suffer, economic damages including, but not limited to, lost earning capacity.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## COUNT VII — AGAINST DEFENDANT STATE
### Indemnification

146.    Every paragraph not falling under this Count is incorporated herein by reference.

147.    Under Maryland Tort Claims Act, Md. Code, State Gov't §§ 12-101 et seq. (the "**MTCA**"), the State is liable for any "tort action" up to the liability cap, § 12-104, including the tortious conduct of its employees that is "within the scope of the public duties of the State personnel" and is committed without "malice or gross negligence." Md. Code, Cts. & Jud. Proc. § 5-522(a)(4); State Gov't § 12-105.

148.    At all times relevant to this Complaint, Defendants were "a State's Attorney of a county or Baltimore City, or an employee of an office of a State's Attorney." § 12-101(a)(8).

149.    The claims raised in this Complaint arise from tortious acts or omissions committed by Defendants within the scope of their employment.

150.    Accordingly, Defendant State is liable to pay for any judgment entered against Defendants in this case.

151.    In addition, this is a cause of action for declaratory judgment pursuant to Md. Code, Cts. & Jud. Proc. § 3-409, for the purpose of determining a question of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

152.    There exists an actual controversy of justiciable issue between Plaintiff and Defendant State within the jurisdiction of this Court, involving the rights and liabilities of the parties, with respect to indemnification of any judgment entered against Defendants.

153.    Antagonistic claims are present between the parties. These claims indicate imminent and inevitable litigation.

154.    A declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00 plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires including, but not limited to, declaratory and injunctive relief declaring the conduct which is the subject of the Complaint unlawful and unconstitutional and enjoining future unlawful and unconstitutional misconduct of the same type.

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, P.C.

_/s/ Kristen Mack_

Cary J. Hansel (AIS No. 9912150020)
Kristen M. Mack (AIS No. 1712140017)
2514 North Charles Street
Baltimore, Maryland 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
kmack@hansellaw.com

*Counsel for Plaintiff*

GREENBERG LAW OFFICE

_/s/ Lawrence S. Greenberg, Esq._

LAWRENCE S. GREENBERG, ESQ.
6 E. Biddle Street
Baltimore, MD 21202
P: 410-539-5250
F: 410-625-7891
larry@greenberglawyers.com

*Counsel for Plaintiff*

## IN THE CIRCUIT COURT FOR
## DORCHESTER COUNTY, MARYLAND

| | |
|---|---|
| **KEY'MARION ENNALS**<br>c/o Greenberg Law Office<br>6 E. Biddle Street<br>Baltimore, MD 21202<br><br>    *Plaintiff.*<br><br>   vs.<br><br>**STATE OF MARYLAND,**<br>SERVE:    Dereck E. Davis<br>           State Treasurer<br>           80 Calvert Street<br>           Goldstein Treasury Building<br>           Annapolis, Maryland 21401<br><br>and<br><br>**AMANDA LEONARD**<br>*Dorchester County State's Attorney*<br>Dorchester County State's Attorney's Office<br>501 Court Ln, Unit 211<br>Cambridge, Maryland 21613<br><br>    and<br><br>**PHILIP DONOHO**<br>Office of the Attorney General<br>200 Saint Paul Place<br>Baltimore, Maryland 21202<br><br>    and<br><br>**ELLA DISHAROON**<br>Dorchester County State's Attorney's Office<br>501 Court Ln, Unit 211<br>Cambridge, Maryland 21613<br><br>    *Defendants.* | **Case No.:** C-09-CV-25-000343<br><br>**\* Jury Trial Demanded \*** |

## LINE REGARDING SUMMONS

Dear Sir/Madam Clerk:

Kindly accept the attached Complaint for filing, issue summons thereon, and return to undersigned counsel for service by private process.

Respectfully submitted,

HANSEL LAW, P.C.

/s/ *Kristen Mack*
Cary J. Hansel (AIS No. 9912150020)
Kristen M. Mack (AIS No. 1712140017)
2514 North Charles Street
Baltimore, Maryland 21218
Phone: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
kmack@hansellaw.com

*Counsel for Plaintiff*

GREENBERG LAW OFFICE

/s/ *Lawrence S. Greenberg, Esq.*
LAWRENCE S. GREENBERG, ESQ.
6 E. Biddle Street
Baltimore, MD 21202
P: 410-539-5250
F: 410-625-7891
larry@greenberglawyers.com

*Counsel for Plaintiff*