# IN THE
# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEY'MARION ENNALS, | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 1:26-cv-00175-BAH |
| | * | |
| STATE OF MARYLAND, ET AL., | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, State of Maryland, Amanda Leonard, State's Attorney for Dorchester County, Philip Donoho, former Deputy State's Attorney for Dorchester County, and Ella Disharoon, Deputy State's Attorney for Dorchester County, by their undersigned counsel, file this memorandum of law in support of their motion to dismiss the complaint.

## INTRODUCTION

Key'Marion Ennals claims he was wrongly incarcerated and prosecuted due to the actions of the Defendants. The individual defendants, State's Attorney Leonard, Mr. Donoho, and Deputy State's Attorney Disharoon have absolute prosecutorial immunity for all claims asserted against them. They also have statutory immunity under the Maryland Tort Claims Act. Further, when prosecutors have absolute immunity for their actions, the State of Maryland will not be liable for their actions.

Mr. Ennals has asserted claims of malicious prosecution (in violation of the Maryland Declaration of Rights Articles 24 and 26) (Count I), (in violation of the Fourth

Amendment to the Constitution of the United States as applied under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983) (Count II), (in tort liability) (Count III), Negligent Training Hiring, Supervision, and Retention as to the State of Maryland only (Count IV), Gross Negligence as to the individual defendants only (Count V), Negligence (Count VI), and Indemnification against the State of Maryland (Count VII).

## FACTS ALLEGED IN THE COMPLAINT

On November 18, 2021, Ja'len Woolford was murdered. (ECF 3, ¶¶ 1, 13.) On January 4, 2022, Officer Hallman of the Maryland State Police obtained a confession from Deaveon Johnson. (ECF 3, ¶ 15.) Mr. Johnson told Officer Hallman that Mr. Ennals was involved with the crime. (ECF 3, ¶ 16.) Officer Hallman filed an Application for Statement of Charges against Mr. Ennals. (ECF 3, ¶ 17.) That day, Mr. Ennals turned himself in to the Cambridge City Police Department after learning there was a warrant issued for his arrest. (ECF 3, ¶ 17.) Mr. Ennals had not been charged with a crime previously. (ECF 3, ¶ 19.)

On March 18, 2022, Mr. Ennals was charged with murder (first and second degree), conspiracy to commit murder (first and second degree), attempted murder (first and second degree), five counts of assault (first degree), five counts of reckless endangerment, use of a firearm to commit a felony/violent crime, and possession of a firearm by a minor. ((ECF 3, ¶ 20.) Mr. Ennals was held without bond continuously from January 4, 2022 through September 27, 2023. (ECF 3, ¶ 21.)

On or about October 24, 2022, the State entered into a plea agreement with Mr. Johnson. (ECF 3, ¶ 25.) In exchange for providing testimony against Mr. Ennals, the State agreed to enter a *nolle prosequi* on all counts except murder—first degree, and recommend a reduced sentence. (ECF 3, ¶ 25.)

On or before February 6, 2023, Mr. Ennals hired Alexandria Chun, PC, as his attorney. (ECF 3, ¶ 26.)

On February 15, 2023, Officer Hallman and Mr. Donoho interviewed Gregory Lamont Cottman. (ECF 3, ¶ 27.) Mr. Cottman told them that Mr. Johnson admitted to shooting Mr. Woolford and that he planned the murder. (ECF 3, ¶ 29.) The State disclosed a "Supplement Report" dated July 31, 2023 but did not disclose any original reports prepared contemporaneously with the interview notes from Officer Hallman or Mr. Donoho. (ECF 3, ¶ 29.)

On March 1, 2023, the Circuit Court for Dorchester County scheduled Mr. Ennals' trial for August 21, 2023[1]. (ECF 3, ¶ 33.)

On or before March 15, 2023, Mr. Ennals retained Lawrence Greenberg to represent him. (ECF 3, ¶ 34.) Mr. Greenberg made a demand for discovery and filed a motion asking the State to comply with its discovery obligations, including all exculpatory and impeachment evidence. (ECF 3, ¶¶ 34-35.) In April 2023, Mr. Greenberg notified the State that he was unable to download or access many of the discovery materials. (ECF 3, ¶ 37.) Communication about the defense's inability to

---

[1] From subsequent allegations in the complaint, it appears that the trial date was moved to early October 2023. (ECF 3, ¶¶ 41-45.)

access discovery continued throughout April. (ECF 3, ¶¶ 38-40.) State's Attorney emailed Mr. Greenberg on April 26, 2023, and advised that the digital discovery drive provided contained all the materials relevant to this case and that the State did not have any *Brady* or *Giglio* information. (ECF 3, ¶ 40.)

On September 20, 2023, State's Attorney Leonard advised Mr. Greenberg that she had met with Mr. Johnson to prepare for trial at which time he revealed the identity of two additional potential witnesses. (ECF 3, ¶ 41.) After that disclosure, Mr. Greenberg asked her to disclose all information that the State is required to provide the defense. (ECF 3, ¶ 42.) State's Attorney Leonard then advised that she would be providing a report from Officer Hallman about the February 15, 2023 interview with Mr. Cottman. (ECF 3, ¶ 44.) The report of the Cottman interview revealed the identities of the two witnesses disclosed by State's Attorney Leonard after her trial preparation meeting with Mr. Johnson. (ECF 3, ¶ 53.) Further the newly disclosed report contained information about Mr. Ennals.

On September 22-23, 2023, Mr. Greenberg and State's Attorney Leonard communicated about the completeness and accuracy of the disclosures. (ECF 3, ¶¶ 55-61.)

On September 27, 2023, the court granted Mr. Ennals' motion to disqualify State's Attorney Leonard, Deputy State's Attorney Disharoon, and the office of the State's Attorney for Dorchester County. (ECF 3, ¶ 72.) The court deferred ruling on the motion

to dismiss for lack of speedy trial[2]. (ECF 3, ¶ 72.) That day, Mr. Ennals was released from incarceration. (ECF 3, ¶ 2.) The trial date was postponed. (ECF 3, ¶ 77.)

On October 24, 2023, Jonathon Church, Assistant State's Attorney for Prince George's County, was appointed as Special Prosecutor. (ECF 3, ¶ 78.)

On October 27, 2023, counsel met with the court in chambers. At that proceeding, the court advised that Deputy State's Attorney Disharoon had engaged in an *ex parte* communication with the court prior to the September 27, 2023 hearing. (ECF 3, ¶ 79.) Defense counsel subsequently learned that Deputy State's Attorney Disharoon had sent two texts to the court. (ECF 3, ¶¶ 85, 88.)

Mr. Ennals' trial proceeded from August 26-29, 2024. (ECF 3, ¶ 92.) The jury rendered a verdict of not guilty. (ECF 3, ¶ 93.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted when "it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs, Inc., v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This Court should accept "as true all of the well-pleaded allegations and [view] the complaint in the light most favorable to the non-moving party." *Lesueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). This Court, however, may disregard conclusions of law or unwarranted deductions of fact because the purpose of a Rule 12(b)(6) motion is to determine legal sufficiency of the

---

[2] The motion to dismiss was subsequently denied as the case went to trial in August 2024. (ECF 3, ¶ 2.)

complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading must allege something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The purpose of the pleading requirement is "to prevent costly discovery on claims with no underlying factual or legal basis." *Migdal*, 248 F.3d at 326 (quoting *DM Research v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

## ARGUMENT

I. **PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY.**

    A. **Trial Prosecutors Have Absolute Immunity for Conduct Arising from Their Role in the Judicial Process.**

At common law, prosecutors are absolutely immune from civil liability for claims arising from their role in the judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976) (noting that prosecutors "enjoyed an absolute immunity from civil liability with

respect to their prosecutorial conduct…" based upon the same considerations that underlie judicial and grand jury immunity namely, a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decision instead of exercising the independence of judgment required by his public trust.").

The doctrine of absolute prosecutorial immunity provides that "prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process" *Gill v. Ripley,* 352 Md. 754, 770 (1999). These functions include deciding whether to commence a prosecution, presenting evidence to a grand jury in the quest for an indictment, filing charges, preparing for and presenting the State's case at trial. *State v. Rovin I*, 472 Md. 317, 346 (2021). In *Nero v. Mosby*, the Fourth Circuit noted that the analysis for prosecutorial immunity looks to "the nature of the function performed", rather than the "harm that the conduct may have caused" or even "the question whether it was lawful." 890 F.3d 106, 118 (4th Cir. 2018) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).

In this case, the alleged wrongful actions against the defendants begin after Mr. Ennals was arrested, charged, and denied bail. Once the defendant was charged, the prosecutors here were preparing to present the case at trial. The allegations of wrongdoing in this case arise out of the alleged failure to timely fulfill discovery and *Brady-Giglio* obligations and engaging in *ex parte* communications with the trial court judge. (ECF 3, ¶¶ 98-99, 110, 123.) The obligation to provide discovery and make *Brady-Giglio* disclosures is a judicial function of a prosecutor. *Rovin I*, 472 Md. at 354.

*See Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). Since the functions performed by the defendant prosecutors related directly to their role in the judicial process absolute immunity must apply.

### B. Allegations of Malice or Ethical Violations Do Not Defeat Absolute Prosecutorial Immunity.

Allegations of deliberate misconduct by the prosecutor do not defeat absolute prosecutorial immunity. In *Imbler*, 424 U.S. at 409, the seminal case recognizing absolute prosecutorial immunity, the alleged actions of the prosecutor were the presentation of false testimony and suppression of material exculpatory evidence. The Supreme Court recognized the concerns about extending absolute prosecutorial immunity for all prosecutorial conduct stating, "…to be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Imbler,* 424 U.S. at 427. Quoting Judge Learned Hand, the Supreme Court concluded, "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Imbler,* 424 U.S. at 428 citing *Gregoire v. Biddle*, 177 F.2d 579, 581 (C.A.2 1949), *cert. denied*, 339 U.S. 949 (1950). *See Yaselli v. Goff*, 12 F.2d, at 404; cf. *Wood v. Strickland*, 420 U.S., at 320, 95 S. Ct., at 1000.

Prosecutorial immunity "does not depend on whether a prosecutor acted with malice" or bad intent (or in violation of ethical standards as alleged by Mr. Ennals, ECF 3, ¶¶ 98-99, 110, 123). *Rovin*, 472 Md. at 345-46 citing *Gill*, 352 Md. at 770; *see also Buckley*, 509 U.S. at 271. Public policy justifies immunity for even allegedly malicious acts because prosecutors must have "[i]ndependence of judgment . . . in deciding which cases to prosecute and in the manner." *Gill*, 352 Md. at 767. If prosecutors had a more limited immunity from "malicious prosecution actions by erstwhile defendants," their worry about "'harassment by unfounded litigation would cause a deflection of the [prosecutors'] energies from [their] public duties.'" *Gill*, 352 Md. at 767 (quoting *Imbler*, 424 U.S. at 422-23 (1976)). In *Imbler*, the prosecutors were accused of suborning perjury and like the allegations in this case, suppressing favorable evidence. 424 U.S. at 413. Even if the prosecutors conspired with co-defendants, prosecutorial immunity would still apply. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (affirming prosecutor's entitlement to absolute immunity, where the plaintiff alleged that prosecutor conspired to present false testimony).

Despite the allegations of ethical misconduct in this case, as in *Imbler*, the prosecutors are entitled to absolute immunity as the conduct at issue arose from their role in the judicial process. Accordingly, all claims against the individual prosecutors (State's Attorney Leonard, Former Deputy State's Attorney Donoho, and Deputy State's Attorney Disharoon) must be dismissed. "Where the individual is entitled to a form of absolute immunity, e.g., prosecutorial immunity or judicial immunity, neither the individual nor the State is civilly liable, even if the individual is also entitled to State Personnel

Immunity under the MTCA [Maryland Tort Claims Act]." *Rovin*, 472 Md. at 348 citing *Parker v. State*, 337 Md. 271 (1995). Likewise, all claims against the State of Maryland must be dismissed.

Since Maryland and federal courts have recognized absolute prosecutorial immunity in an identical manner, this Court should dismiss the federal claims and the state claims against the individual defendants and the State of Maryland.

**C.  A Supervising Attorney Has Absolute Immunity for Claims Of Negligent Supervision and Training.**

The complaint asserts allegations of negligent training regarding discovery and disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1983) and *Giglio v. United States*, 405 U.S. 150 (1972). (Count IV). Pursuant to the Supreme Court's decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), absolute prosecutorial immunity also applies to claims of negligent supervision in training where the training at issue relates to prosecutorial functions. Claims for negligent supervision and training arise from alleged conduct by a prosecutor that occurred during or in the preparation of trial. *Id.* at 346.

Like this case, the *Van de Kamp* plaintiff asserted claims of negligent supervision and training. 555 U.S. at 339. The Supreme Court noted that if claims of negligent supervision and training were not subject to absolute prosecutorial immunity, a trial prosecutor could have absolute immunity, but a supervising prosecutor would be subject to liability. *Van de Kamp*, 555 U. S. at 345. The Supreme Court determined, "…Most important, the ease with which a plaintiff could restyle a complaint charging a trial failure

so that it becomes a complaint charging a failure of training or supervision would eviscerate *Imbler*." *Van de Kamp*, 555 U. S. at 347.

Since Mr. Ennals' claims of negligent training relate to the judicial process (discovery and *Brady-Giglio* obligations), they are subject to absolute prosecutorial immunity. When a State's Attorney is entitled to absolute prosecutorial immunity, the State is not civilly liable for their actions. *Rovin*, 472 Md. at 356. Accordingly, Count IV must be dismissed.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY STATUTORY IMMUNITY.

The claims brought under the Maryland Tort Claims Act are barred by absolute prosecutorial immunity thereby alleviating the individual defendants and the State of Maryland from liability. *Rovin*, 472 Md. at 356.

In addition to absolute prosecutorial immunity, state personnel have statutory immunity from tort claims for actions taken in the scope of their public duties, so long as the personnel acted without malice or gross negligence. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-522(b); Md. Code Ann., State Gov't, § 12-105[3] (LexisNexis 2019). A State's Attorney is State personnel. State Gov't § 12-101(a)(8). In general, a claim for tortious conduct, whether a common law tort or a constitutional tort, may only be pursued against the State, not the individual employee. *Lee v. Cline*, 384 Md. 245 (2004). Plaintiff

---

[3] Where the action was taken without malice or gross negligence, the State may be liable under the Tort Claims Act. *See* State Gov't § 12-104 (providing for a limited waiver of sovereign immunity).

attempts to nullify statutory immunity by alleging claims of malice (malicious prosecution) and gross negligence (Counts I, III, and V) against the defendants.

### A. Plaintiff Failed to Sufficiently Allege Malice.

Mr. Ennals alleges that the defendants acted with malice by continuing the prosecution against him. (ECF 3, ¶¶ 99, 103, 124.) To establish malice under Maryland law, Plaintiff must show that the conduct at issue was "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraudulent." *Barbre v. Pope*, 402 Md.157, 182 (2007) (quoting *Lee v. Cline*, 384 Md. 245, 268 (2004)). "A plaintiff cannot prove malice, merely by asserting that an act 'was done maliciously or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive…" *Houghton v. Forest*, 183 Md. App. 15, 28 (2008), *aff'd in part & vacated in part*, 412 Md. 578 (2009) (quoting *Elliot v. Kupferman*, 58 Md. App. 510, 528 (1982)).

"Indeed, the plaintiff must present facts that indicate a nefarious motive, ill-will towards the plaintiff, or a history of animosity." *Houghton,* 183 Md. App. at 28 citing *Nelson v. Kenny*, 121 Md. 482, 493-95. Here, the complaint does not allege sufficient facts to justify a finding of malice: there is no allegation of a nefarious motive, no allegation of ill-will towards the plaintiff, and no allegation of a history of malice between Mr. Ennals and any of the prosecutors.

### B. Plaintiff Failed to Sufficiently Allege Gross Negligence.

Alternatively, Mr. Ennals alleges that the State's Attorney's actions were grossly negligent. (Count V).

In reviewing the complaint for sufficiency, the court must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Higginbotham. v. Pub. Serv. Comm'n of Maryland*, 171 Md. App. 254, 264 (2006).

Recently, the Supreme Court of Maryland (formerly the Court of Appeals) explained the standard for a finding of gross negligence as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Stracke v. Estate of Butler*, 465 Md. 407, 420-21 (2019) citing *Barbre v. Pope*, 402 Md. 157, 187 (2007). In *Stracke,* 465 Md. at 421, the Court observed that "gross negligence is not just big negligence ... [but] must be sufficient to establish that the defendant …had wanton or disregard for human life…Only conduct that is of extraordinary or outrageous character will be sufficient to imply this state of mind." (quoting *Thomas v. State* , 237 Md. App. 527, 537 (2018) *rev'd State v. Thomas*, 464 Md. 133 (2019)).

Based on the allegations of the amended complaint, the State's Attorney's conduct does not, as a matter of law, rise to the level of gross negligence. The allegations here are that the prosecutors were grossly negligent because Mr. Ennals was held in custody prior to trial. The allegations imply that any prosecutor would be grossly negligent any time a defendant was held in custody prior to trial and received a favorable outcome. That result would be absurd and would have a chilling effect on the prosecution of crime. There are no sufficient allegations that the prosecutors acted in reckless

.

disregard of the consequences or showed outrageous character. The complaint has failed to sufficiently allege acts that rise to the level of gross negligence.

The insufficiency of the allegations of malice and gross negligence mandates that the individual defendants are entitled to statutory immunity and all the tort claims against them (state constitutional and state common law tort claims) must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants, State of Maryland, Amanda Leonard, State's Attorney for Dorchester County, Philip Donoho, Former Deputy State's Attorney for Dorchester County, and Ella Disharoon, Deputy State's Attorney for Dorchester County, move that this Court dismiss all claims against them with prejudice.

    Respectfully submitted,

    ANTHONY G. BROWN
    Attorney General of Maryland

    /s/ Wendy L. Shiff

    _____
    WENDY L. SHIFF
    Federal Bar No. 09076
    Assistant Attorney General
    Office of the Attorney General
    200 Saint Paul Place, 20th Floor
    Baltimore, Maryland 21202
    wshiff@oag.state.md.us
    (410) 576-6996
    (410) 576-6955 (facsimile)

January 22, 2026    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that, on this 22nd day of January, 2026 the foregoing was served by CM/ECF on all registered CMF users and by first-class mail on the following:

/s/ Wendy L. Shiff
_____
Wendy L. Shiff