**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>KEY'MARION ENNALS,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>Civil No. 26-175-BAH</td></tr>
<tr><td>STATE OF MARYLAND ET AL.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

This case arises from the alleged malicious prosecution of Plaintiff Key'Marion Ennals ("Ennals") for the murder of Ja'len Woolford. In December of 2025, Ennals brought suit in the Circuit Court for Dorchester County against the State of Maryland (the "State"), and state prosecutors Amanda Leonard, Philip Donoho, and Ella Disharoon (the "prosecutor Defendants")[1] (collectively "Defendants") alleging three counts of malicious prosecution against all Defendants (Counts I–III), one count of negligent training, hiring, supervision, and retention against the State (Count IV), a count of negligence against all Defendants and gross negligence against the prosecutor Defendants (Counts V–VI), and one count of indemnification against the State (Count

---

[1] Ennals has not made clear from the face of his complaint whether he is suing the prosecutor Defendants in their individual or official capacities (or both). In such circumstances, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Because Ennals seeks monetary damages, the Court will assume he is suing defendants in their individual capacities. *See, e.g., Parks v. Lowe*, Civ. No. 1:09CV00070, 2010 WL 545679, at *7 (W.D. Va. Feb. 12, 2010) ("Parks has not asserted that the defendants acted in accordance with any policy or custom, and he is seeking monetary damages, which indicates he is suing the defendants in their individual capacities."), *report and recommendation adopted*, No. 1:09CV00070, 2010 WL 753335 (W.D. Va. Mar. 1, 2010), *aff'd*, 407 F. App'x 643 (4th Cir. 2011).

VII). ECF 3. In January of 2026, the State of Maryland removed the case to this Court. ECF 1. Pending before the Court is Defendants' motion to dismiss for failure to state a claim. ECF 5. Ennals filed an opposition, ECF 16, and Defendants filed a reply, ECF 20. All filings include memoranda of law.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary.[3] *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

On November 18, 2021, Ja'len Woolford was murdered in Cambridge, Maryland. *See* ECF 3, at 4 ¶ 13. On January 4, 2022, "Officer Hallman of the Maryland State Police Department interviewed" Deaveon Johnson "and obtained a confession regarding the murder of Ja'len Woolford." *Id.* at 4–5 ¶¶ 14–15. During that interview, Johnson "name[d] a slew of individuals who may have had some involvement with the shooting under the premise that Officer Hallman would speak with the prosecutor and ensure that Mr. Johnson received a deal." *Id.* at 5 ¶ 16. Ennals was one of the individuals named. *See id.* After Johnson's confession, "Officer Hallman filed an Application for Statement of Charges against Mr. Ennals." *Id.* ¶ 17. "Around 9:00 p.m. that day, [ ] Ennals voluntarily walked into the Cambridge City Police Department after learning there was a warrant for his arrest." *Id.* Officer Hallman then interviewed Ennals, "who repeatedly denied involvement" in Woolford's death. *Id.* ¶ 18. The same night, "Ennals was arrested and processed at the Cambridge Police Department." *Id.* Ennals had no prior criminal history. *See id.* ¶ 19.

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] Accordingly, Ennals' conditional request for a hearing, ECF 16, at 50, is DENIED.

On March 18, 2022, Johnson was charged with first- and second-degree murder and several other crimes related to Woolford's death. *Id.* ¶ 20. Ennals was held without bond throughout this time and for months after, until September 27, 2023—a total of 631 days. *Id.* at 6 ¶ 21. "Ennals' sister died while he was incarcerated." *Id.* at 17 ¶ 94. "Ennals filed a motion for compassionate release to allow [ ] Ennals to be transported to her funeral," which Leonard opposed, and ultimately Judge Karen Dean, the state judge presiding over his case, "denied [ ] Ennals' motion and [ ] Ennals was not permitted to attend his sister's funeral." *Id.*

In October of 2022, the State and Johnson reached a plea agreement. *See id.* at 6 ¶ 25. Johnson agreed to plead guilty to first degree murder and, "[i]n return for [ ] Johnson's testimony against [ ] Ennals, the State agreed to enter a nolle prosequi to all other counts of the indictment and recommend that [ ] Johnson receive a sentence of Life Imprisonment, suspending all but forty years, with five years of supervised probation, to be served under the Patuxent Youthful Offenders Program." *Id.* "Johnson was ultimately sentenced to Life Imprisonment, suspending all but twenty-five years, with five years' supervised probation." *Id.*

On February 15, 2023, Officer Hallman and Donoho interviewed another individual related to this matter, Gregory Lamont Cottman. *Id.* at 7 ¶ 27. Cottman stated that he "did not think Ennals did anything because Johnson was bragging about the shooting." *Id.* ¶ 29. In March of 2023, Ennals' trial was scheduled for August 21, 2023. *Id.* at 8 ¶ 33. Shortly thereafter, Ennals' counsel began seeking discovery from the State, including the production of "exculpatory evidence or evidence that tends to impeach the State's witness." *Id.* ¶ 35. In April of 2023, Leonard made a digital discovery drive partially accessible to Ennals' counsel and represented "that the State was not in possession of any *Brady* or *Giglio* information." *Id.* at 9 ¶ 40. In the lead up to trial, Ennals requested that Leonard disclose information related to the investigation. *See id.* ¶¶ 42–43. Leonard

3

did not disclose the Cottman interview until just eleven days before trial, despite the fact that "Leonard . . . had personal knowledge of the interview at the same time it occurred." *Id.* at 10 ¶¶ 45–46. Even after this disclosure, Ennals' counsel had to follow up to obtain the full interview, recording, and handwritten notes prepared during. *See id.* at 12 ¶¶ 58–61.

Seven days before trial, Ennals alleges that "Leonard and her office had committed multiple ethical and legal violations, failed to provide additional notes mentioned in the report, failed to file her service of discovery notice with the court, and still failed to provide a finalized list of her trial witness and trial evidence disclosures that are mandatory and must be done without request under Md. Rule 4-263." *Id.* at 13 ¶ 65 (emphasis omitted). On September 25, 2023, Ennals filed an emergency motion to dismiss and for lack of speedy trial. *Id.* at 14 ¶ 69. On September 27, 2023, the state court granted Ennals' separate motion to disqualify Leonard, Disharoon, and the State's Attorney's Office for Dorchester County "as the result of the State withholding exculpatory evidence from the defense for over seven months and eventually providing it . . . on the eve of trial." *Id.* ¶¶ 72–73. At that point, Ennals' case was postponed "indefinitely for the assignment of specially assigned counsel." *Id.* at 15 ¶ 77. In October of 2023, Jonathon Church, an Assistant State's Attorney from Prince George's County, was appointed as special prosecutor in Ennals' case. *Id.* ¶ 78.

That same month, Ennals alleges that Church met with Judge S. James Sarbanes, who "advised that at least one member of the State's Attorney's office, Defendant Disharoon, engaged in an ex-parte communication with Judge Dean prior to the September 27, 2023 hearing." *Id.* ¶ 79. "While Judge Sarbanes did not disclose the actual text surrounding the communication, despite a request to do so, he did advise that [ ] Disharoon texted Judge Dean sometime after [Ennals' defense attorney] uncovered the state's failure to disclose exculpatory evidence, and [ ] Disharoon

4

said that she was not part of what was about to become public." *Id.* Ennals' counsel was advised of this ex-parte communication and took measures to get further information. *Id.* at 15–16 ¶¶ 81–82.

Eventually, Disharoon's counsel provided *two* texts exchanged between Disharoon and Judge Dean—one from July 20, 2022 and another on September 25, 2022. *Id.* at 16 ¶¶ 84–88. The first involved Disharoon advising Judge Dean that a motions hearing in Ennals' case needed to be postponed. *See id.* ¶ 85. The second was the communication acknowledged by Judge Sarbanes in his conversation with Church, which involved Disharoon texting Judge Dean to say, presumably in reference to Ennals' case, "I have nothing to do with anything that might be filed over the next few days. Only been in this case for a couple weeks. Just fyi..." *Id.* at 16–17 ¶ 88. "To date," Ennals alleges that he has not been "permitted to obtain additional documents between the court and Defendants other than [ ] Disharoon's alleged limited texts." *Id.* at 17 ¶ 91.

"Ennal's criminal trial began on August 26, 2024, and it lasted four days." *Id.* ¶ 92. "A jury returned a not guilty verdict on all counts within 18 minutes." *Id.* ¶ 93.

### B.    Procedural History

Ennals now brings suit against Defendants as a result of what he argues was Defendants' malicious prosecution of him for the murder of Woolford. *See* ECF 3, at 2 ¶ 1. Ennals' complaint asserts seven counts in total. *See id.* at 17–32. In Count I, Ennals asserts a malicious prosecution claim arising under Articles 24 and 26 of the Maryland Declaration of Rights against all Defendants. *Id.* at 17–19. Ennals alleges that Defendants "deprived Plaintiff of his rights under Articles 24 and 26 of the Maryland Declaration of Rights by falsely prosecuting Plaintiff after discovering exculpatory information, by improperly withholding evidence from Plaintiff and Plaintiff's counsel, engaging in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engaging in other misconduct that deprived

5

Plaintiff of his liberty." *Id.* at 18 ¶ 98. Ennals also argues that Defendants "falsified and/or misstated vital information in their court filings, in communication with Plaintiff's counsel, and in reports, including, but not limited to, the reports relating to the exculpatory interview of [ ] Cottman." *Id.* ¶ 100. In Count II, Ennals asserts another malicious prosecution claim against all Defendants arising under the Fourth Amendment. *See id.* at 20–22. Count III also asserts a malicious prosecution claim against all Defendants, presumably arising under Maryland common law. *See id.* at 22–24.

In addition to those malicious prosecution claims, Ennals asserts a negligent training, hiring, supervision, and retention claim against the State. *See id.* at 24–25. In Count IV, Ennals asserts that the State had a "duty to ensure State's Attorneys, Assistant State's Attorneys, and Assistant Attorneys General are trained to conduct their prosecutorial activities within constitutional bounds" and to ensure they are "competent," as well as "a duty to discipline and/or fire attorneys who failed to conduct their duties in a constitutional manner." *Id.* at 24 ¶ 129. However, Ennals alleges that the "State breached its duty to ensure that the Defendants were competent and trained in the state and federal constitutional limits of their prosecutorial authority, which led the Defendants to believe that they could unconstitutionally prosecute Plaintiff without probable cause, withhold exculpatory evidence from Plaintiff and Plaintiff's counsel, engage in *ex parte* communication with the court to obtain improper delays in violation of Plaintiff's speedy trial rights, and engage in other misconduct that deprived Plaintiff of his liberty." *Id.* ¶ 130.

Finally, Ennals asserts a claim of gross negligence (Count V) against Leonard, Donoho, and Disharoon, as well as a claim of negligence (Count VI) under Maryland common law against all Defendants, for the same conduct described above related to the prosecution of his case, along with a count for indemnification against the State under the Maryland Tort Claims Act ("MTCA").

*See id.* at 26–29. On January 22, 2026, Defendants filed the pending motion to dismiss, ECF 5, which became ripe for review on April 3, 2026, ECF 20. The Court now resolves the pending motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

## III.   ANALYSIS

### A.   The Prosecutor Defendants

Apart from the State itself, Ennals has brought this suit against three state prosecutors. It is perhaps unsurprising, then, that Defendants primarily rest their motion to dismiss on the application of prosecutorial immunity to the claims asserted. *See* ECF 5-1, at 6–10. The Supreme

Court has held that prosecutors are absolutely immune from damages liability when they act as advocates for the State. *See Imbler v. Pachtman*, 424 U.S. 409, 430–32, (1976). "That decision rests on an 'important public policy' justification." *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018) (quoting *Carter v. Burch*, 34 F.3d 257, 261 (4th Cir. 1994)). "The public trust of the prosecutor's office would suffer were the prosecutor to have in mind his own potential damages liability when making prosecutorial decisions—as he might well were he subject to § 1983 liability." *Id.* (internal quotation marks omitted) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 341–42 (2009)). Although this immunity leaves those "'genuinely wronged' without a remedy against prosecutors acting for malicious or unlawful purposes," the Supreme Court has concluded that "the importance of shielding prosecutorial decision-making from the influence of personal liability concerns . . . outweigh[s] that harm." *Id.* (first quoting *Imbler*, 424 U.S. at 427; then citing *Carter*, 34 F.3d at 261).

"Given these costs, however, the Court has been careful to limit the scope of a prosecutor's absolute immunity." *Id.* "Because prosecutorial immunity 'safeguards the process, not the person,' it applies only to conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Id.* (internal quotation marks omitted) (quoting *Nero v. Mosby*, 890 F.3d 106, 117–18 (4th Cir. 2018)). "In deciding whether an action meets that standard," the Court applies "a 'functional approach,' looking to 'the nature of the function performed,' without regard to 'the identity of the actor who performed it.'" *Id.* (internal quotation marks omitted) (quoting *Nero*, 890 F.3d at 118). The focus should remain "on the 'conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)).

"In applying this functional approach, the Supreme Court has distinguished between advocative functions and investigative or administrative functions, holding that the former enjoy absolute immunity but the latter do not." *Nero*, 890 F.3d at 118 (citing *Kalina v. Fletcher*, 522 U.S. 118, 125–26 (1997)). "A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, decides to seek an arrest warrant, prepares and files charging documents, participates in a probable cause hearing, and presents evidence at trial." *Id.* (internal citations omitted). "In contrast, a prosecutor does not act as an advocate, but rather in an investigative or administrative capacity, when she gives legal advice to police during an investigation, investigates a case before a probable cause determination, and personally attests to the truth of averments in a statement of probable cause." *Id.* (internal citations omitted).

Ennals argues that prosecutorial immunity does not apply here. *See* ECF 16, at 14. He asserts that "[t]he purpose of prosecutorial immunity, in theory, is to protect the prosecutor from 'harassment by unfounded litigation,' such that the prosecutor does not 'shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Id.* (quoting *Imbler*, 424 U.S. at 423). Because the "doctrine arose from the recognition that a prosecutor's *judgment* and *decision making* should not be subject to civil suit lest potential liability for the consequences of those decisions impede the prosecutor's judgment," Ennals argues prosecutorial immunity should apply to "*advocative decision making*," which he contends is not the conduct his suit challenges. *Id.* at 14–15 (emphasis in original). But advocative decision making, as defined by the Fourth Circuit, constitutes exactly the kind of conduct for which Ennals seeks to hold the prosecutor Defendants liable here.

In applying the functional approach, the Fourth Circuit has stated that "the timing of a prosecutor's conduct is a key factor." *Annappareddy v. Pascale*, 996 F.3d 120, 139 (4th Cir. 2021)

(citing *Buckley*, 509 U.S. at 273).    "Actions taken by a prosecutor *after* a probable-cause determination has been made generally are classified as 'advocative' functions – 'relat[ing] to an advocate's preparation for the initiation of a prosecution or for judicial proceedings' – that trigger absolute immunity[.]" *Id.* (emphasis in original) (first quoting *Nero*, 89 F.3d at 118; and then quoting *Buckley*, 509 U.S. at 272–73). "That includes, of course, the presentation of evidence at trial, or before a grand jury after a decision to seek an indictment is made." *Id.* (citing *Buckley*, 509 U.S. at 273). "By contrast, actions taken *before* probable cause is established are more likely to be 'investigative' in nature – the same kind of function normally performed by detectives or police officers – and therefore protected only by qualified immunity." *Id.* (citing the same). As Defendants observe, "[i]n this case, the alleged wrongful actions . . . begin after [ ] Ennals was arrested, charged, and denied bail." ECF 5-1, at 7. The allegations of wrongdoing related to the malicious prosecution counts "arise out of the alleged failure to timely fulfill discovery and *Brady-Giglio* obligations and engaging in ex parte communications with the trial court judge." *Id.* (citing ECF 3, at 18–20 ¶¶ 98–99, 110, at 22–23 ¶ 123).

Although Ennals alleges that there "was no probable cause or justification for the prosecution of Plaintiff," ECF 3, at 20 ¶ 111, his complaint does not identify specific instances of alleged wrongdoing by the prosecutor Defendants operating in their investigative capacity. Rather, as Ennals clarifies in his opposition, his "claims generally arise from two categories of misconduct: Defendant Disharoon engaging in *ex parte* communication with the trial judge on multiple occasions, and the Defendants' failure to disclose the evidence arising out of the interview with Mr. Cottman on February 15, 2023." ECF 16, at 23–24 (internal citation omitted). In addition to the fact that it is not clear how the *ex parte* communications alleged in the complaint played into the decision to prosecute Ennals, "[c]ourts have granted absolute immunity despite claims of ex

10

parte communications with judges." *Fares v. U.S. I.N.S.*, 29 F. Supp. 2d 259, 263 (W.D.N.C. 1998) (collecting cases), *aff'd*, 11 F. App'x 137 (4th Cir. 2001). "What is more, courts have found prosecutors and analogous attorneys immune from liability for claims of making false or defamatory statements in judicial proceedings, as well as for claims of eliciting false and defamatory testimony from witnesses." *Id.* (collecting cases). And well-established amongst the advocative functions is a prosecutor's "decision as to whether [ ] evidence was exculpatory." *Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994); *Annappareddy*, 996 F.3d at 141 ("It is well established . . . that the failure to disclose exculpatory evidence while a criminal proceeding is pending is an 'advocative' function protected by absolute immunity. As the Supreme Court explained in *Imbler*, the 'deliberate withholding of exculpatory information,' even if unconstitutional, is considered part of the prosecutorial role for immunity purposes." (citation omitted)). Because Ennals' malicious prosecution, negligence, and gross negligence claims all turn on these shared allegations about advocative prosecutorial conduct, they must be dismissed.

Ennals seeks to escape this conclusion by asking the Court to focus on the purpose of the immunity. To be sure, the doctrine of prosecutorial immunity is founded in part on the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties." *Imbler*, 424 U.S. at 423. But that does not mean "*unfounded* litigation" is a prerequisite for the application of prosecutorial immunity. To the contrary, prosecutorial immunity can "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* at 427. But that reality is outweighed by "the broader public interest" recognized by the Supreme Court in *Imbler. Id.*; *Annappareddy*, 996 F.3d at 139 ("We recognize that when absolute prosecutorial immunity applies . . . it may in some cases lead to unfair results . . . . But as we have explained, the Supreme

11

Court has concluded that 'important public policy justification[s]' outweigh these harms." (quoting *Savage v. Maryland*, 896 F.3d 260, 268 (4th Cir. 2018)).

Appearing to recognize the likelihood of the conclusion the Court now reaches with respect to prosecutorial immunity, Ennals eloquently argues that "there is a good faith basis for a change in the law." ECF 16, at 26 (emphasis omitted and capitalization altered). Ennals even suggests that the Court "certify the challenge to prosecutorial immunity presented here to the Supreme Court of Maryland," pursuant to the Maryland Uniform Certification of Questions of Law Act. ECF 16, at 32. The Court appreciates Ennals' thorough research and thoughtful review of this area of the law. *See id.* at 26–40. But the doctrine of prosecutorial immunity is well-settled, and it is not this Court's role to overturn decades of precedent. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) ("The principle that a district court may not violate the mandate of a circuit court of appeals and may not alter the law of the case so established is basic." (quoting *United States v. Henry*, 709 F.2d 298, 306 (5th Cir. 1983)). The claims asserted against the prosecutor Defendants are dismissed.[4]

**B.    The State**

"A state waives its immunity under the Eleventh Amendment when it removes an action to federal court." *Francis v. Univ. of Balt.*, Civ. No. RDB-24-2295, 2025 WL 1952515, at *9 (D. Md. July 16, 2025) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002)). And in the Fourth Circuit, "a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020). Under the MTCA, the "General Assembly has partially waived the State's sovereign immunity by enacting SG § 12-104(a)," which provides the waiver

---

[4] Because the Court disposes of the action on this ground, it does not reach Defendants' arguments that they are also statutorily immune from suit under the MTCA. *See* ECF 5-1, at 11.

in "a tort action, up to $400,000 per claimant per incident or occurrence." *State v. Rovin*, 246 A.3d 1190, 1207 (Md. 2021). The MTCA "contemplate[s] two possible outcomes where an individual who is State personnel has allegedly engaged in a tortious act or omission for which there is an issue of." *Id.* "If the individual acts within the scope of the individual's public duties and without malice or gross negligence, the individual is entitled to State personnel immunity, and the State is not entitled to sovereign immunity." *Id.* at 1207–08. "By contrast, if the individual does not act within the scope of the individual's public duties or if the individual acts with malice or gross negligence, then the individual is not entitled to State personnel immunity, and the State is entitled to sovereign immunity because sovereign immunity is not waived under that circumstance." *Id.* at 1208.

"That said, where the individual is entitled to a form of absolute immunity, *e.g.*, prosecutorial immunity or judicial immunity, *neither the individual nor the State is civilly liable*, even if the individual is also entitled to State personnel immunity under the MTCA." *Id.* (emphasis added). That principle applies in full force here. Given that the prosecutor Defendants "are entitled to prosecutorial immunity, an absolute immunity," for the claims discussed above, "the State cannot be held civilly liable for their actions in this case." *Id.* at 1208–09. That principle extends to the count of negligent training, hiring, supervision, and retention asserted solely against the State. As the Supreme Court has explained, "[o]nce we determine that supervisory prosecutors are immune in a suit directly attacking their actions related to an individual trial, we must find they are similarly immune" for a "'faulty training' claim" like the type brought here. *Van de Kamp v. Goldstein*, 555 U.S. 335, 346 (2009). Because the negligent training, hiring, supervision, and retention claim turns on the same alleged misconduct the Court concludes is encompassed by

13

absolute, prosecutorial immunity, it is thus "directly connected with the prosecutor's basic trial advocacy duties," *id.* at 346, and must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and the Clerk will be directed to **CLOSE** this case.  A separate implementing order will issue.

Dated: June 30, 2026

_____/s/_____
Brendan A. Hurson
United States District Judge

14